**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA GLAZIERS PENSION TRUST FUND; DOUGLAS CHRISTOPHER, Trustee; and JOHN MAGGIORE, Trustee,<br><br>Plaintiffs,<br><br>vs.<br><br>HOLLIS GLASS, INC., *et al*.,<br><br>Defendants.<br>_____/ | No. C 11-0966 CW (MEJ)<br><br>**AMENDED REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>**(Dkt. No. 16)** |

## I. INTRODUCTION[1]

Before the Court is Plaintiffs Northern California Glaziers Pension Trust Fund, Douglas Christopher, and John Maggiore's (collectively "Plaintiffs") Motion for Default Judgment, filed August 19, 2011. Dkt. No. 16. For the following reasons, the Court RECOMMENDS that the District Court GRANT default judgment against Defendant Hollis Glass, Inc. ("Defendant") and award Plaintiffs damages in the amount of $490,933.44 for assessed withdrawal liability, liquidated damages, and interest, and $9,273.00 in attorneys' fees and costs, for a total award of $500,206.44.

/ / /

/ / /

---

[1] This filing amends the caption in the previously-filed Report and Recommendation (Dkt. No. 31). No other substantive changes have been made.

## II. BACKGROUND

**A. Factual Background**

Plaintiff Northern California Glaziers Pension Trust Fund ("the Trust") is an "employee benefit plan" as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") Section 3(2) (29 U.S.C. § 1002(3)), an "employee benefit pension plan" as defined by ERISA Section 3(2) (29 U.S.C. § 1002(2); and a "multiemployer plan" as defined by ERISA Sections 3(37) and 4001(a)(3) (29 U.S.C. §§ 1002(37) and 1301(a)(3)). Compl. ¶ 3, Dkt. No. 1. The Trust is jointly administered and maintained pursuant to the Labor Management Relations Act Section 302(c) (29 U.S.C. § 186(c). *Id.* Plaintiffs Douglas Christopher and John Maggiore are members of the Board of Trustees of the Trust, the "plan sponsor" within the meaning of ERISA Sections 3(16)(B)(iii) and 4001(a)(10)(A) (29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10)(A)). Accordingly, Plaintiffs Douglas Christopher and John Maggiore are fiduciaries of the Trust under ERISA Sections 3(21)(A) and 402(a) (29 U.S.C. § 1002(a)). *Id.* at ¶ 4. As Trustees of the Trust they are empowered to bring this action on behalf of the Trust. 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1)-(b).

Defendant is a California corporation with its principal place of business located in Santa Clara, California. Compl. ¶ 5. Defendant is an employer within the meaning of ERISA Section 3(5) (29 U.S.C. § 1002(5)) and National Labor Relations Act ("NLRA") Section 2(2) (29 U.S.C. § 152(2)), and is engaged in an industry affecting commerce within the meaning of ERISA Section 3(11) and (12) (29 U.S.C. § 1002(11) and (12)). *Id.*

Pursuant to a Collective Bargaining Agreement with District Council No. 16, International Union of Painters and Allied Trades ("the Union"), Defendant was a participating employer in the Northern California Glaziers Pension Trust Fund. Compl. ¶ 12; McCormick Decl. ¶ 3, Dkt. No. 17. The Union is a labor organization as defined in NLRA Section 2(5) (29 U.S.C. § 152(5)) that represents employees in an industry affecting interstate commerce. Compl. ¶ 12.

In August 2005, Defendant made a complete withdrawal from participation in the Trust under ERISA Section 4203(b) (29 U.S.C. § 1383(b)), which thereby triggered the Trust to assess

2

withdrawal liability against Defendant. Compl. ¶ 3; McCormick Decl. ¶ 4. Plaintiffs duly notified Defendant of the withdrawal liability assessed against it as required by ERISA Sections 4201-03 (29 U.S.C. § 1381 et seq.). Compl. ¶¶ 14, 15; McCormick Decl. ¶ 5, Ex. C. In particular, the Trust notified Defendant that it had the option to challenge the calculation of the withdrawal liability by requesting review within 90 days from receiving the notice of the withdrawal liability assessment as provided by ERISA Section 4219(b)(2) (29 U.S.C. § 1399(b)(2)), and that any dispute concerning a determination of withdrawal liability must be resolved through arbitration provided that arbitration was timely requested under ERISA Section 4221(a) (29 U.S.C. § 1401(a)). Compl. ¶ 15(d) and (e); McCormick Decl. ¶ 5, Ex. C. Defendant never challenged the withdrawal liability assessment by requesting review or initiating arbitration. Compl. ¶ 16. Defendant also made eight quarterly installment payments on the withdrawal liability totaling $75,672. Compl. ¶ 17; McCormick Decl. ¶ 6. Of that amount, $55,804 was allocated toward interest and $19,868 was allocated toward reduction of the principal liability assessed. *Id.* Defendant thereafter failed to make any further installment payments, leaving a withdrawal liability of $394,780. Compl. ¶¶ 17-18; McCormick Decl. ¶ 6.

### B. Procedural Background

On March 2, 2011, Plaintiffs filed a Complaint against Defendant seeking judgment against Hollis Glass, Inc. for the entire balance of the withdrawal liability of $394,780 under ERISA Section 4219(c)(5) (29 U.S.C. § 1399(c)(5)), interest under ERISA Sections 4201-03 (29 U.S.C. Sections 1381, et seq.), liquidated damages under ERISA Sections 4301(b) and 502(g)(2) (29 U.S.C. §§ 1451(b) and 1132(g)(2)), and attorneys' fees and costs incurred by Plaintiffs in connection with this action as permitted by ERISA Sections 4301(e) and 502(g) (29 U.S.C. §§ 1451(e) and 1132(g)). Dkt. No. 1.

On March 17, 2011, Plaintiffs served Defendant with a copy of the Complaint and Summons. Dkt. Nos. 6-7. Defendant failed to respond to the Complaint. On April 11, 2011, Plaintiffs notified Defendant that should Defendant not respond to the Complaint by April 21, 2011, Plaintiffs would

immediately request the entry of default against Defendant and, without further notice, would move the Court for entry of judgment against Defendant for the withdrawal liability assessment, liquidated damages, interest, attorneys' fees and costs, and for injunctive relief ordering Defendant to furnish information and produce documents under ERISA Section 4219(a). Johnson Decl., at ¶8, Exhibit H, Dkt. No. 18.

On April 26, 2011, Plaintiffs filed a request for the Clerk of Court to enter default. Dkt. No. 9. On May 3, 2011, the Clerk of Court entered default against Defendant. Dkt. No. 10.

On August 19, 2011, Plaintiffs filed their Motion for Default Judgment against Defendant Hollis Glass, Inc. Dkt. Nos. 16-19. On August 24, 2011, the matter was referred to the undersigned by the Honorable Claudia Wilken for a report and recommendation on Plaintiffs' motion. Dkt. No. 24. In their motion, Plaintiffs seek entry of judgment by default ordering Defendant to make payment on delinquent withdrawal liability assessed by the Fund against Defendant. Mot. at 1. Plaintiffs also seek liquidated damages and interest assessed thereon and costs incurred in this action. *Id.* Plaintiffs seek damages as follows:

| | | | |
|---|---|---|---|
| A. | Total withdrawal liability assessed: $414,648.00 | | |
| | Less principal paid through 4/2/10   $19,868.00 | | |
| | Balance due of withdrawal liability | | $394,780.00 |
| B. | Liquidated damages on delinquent withdrawal liability at 20% | | $78,956.00 |
| C. | Interest on delinquent withdrawal liability at 5% simple interest per annum through 9/30/11 | | $17,197.44 |
| D. | Costs of suit: | Investigative fee    $2,500.00<br>Complaint filing fee  $ 350.00<br>Process service fees  $ 182.00 | |
| | | | $3,032.00 |
| E. | Attorneys' Fees | | $10,938.00 |
| | | **TOTAL** | **$ 504,903.44** |

*Id.*

4

Plaintiffs further seek entry of an order compelling Defendant to produce documents required by ERISA Section 4219(a), (29 U.S.C. § 1399), to enable the Fund to evaluate liability of entities who may be under common control (ERISA Section 4001(b)(1)), (29 U.S.C. §1301(b)), and to determine whether any transactions to evade or avoid withdrawal liability have occurred (ERISA Section 4212(c), (29 U.S.C. §1392(c)). *Id.*

On October 13, 2011, the Court held a hearing on the matter. Defendant failed to appear at the hearing and has not otherwise responded to Plaintiffs' motion.

## III. DISCUSSION

**A.     Jurisdiction and Service of Process**

When considering whether to enter a default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.")

1.     <u>Subject Matter Jurisdiction</u>

The District Court has subject-matter jurisdiction over this action pursuant to Sections 4301(c) and 502(e)(1) and (f) of ERISA (29 U.S.C. §§ 1451(c) and 1132(e)(1) and (f)). Plaintiffs seek to enforce the provisions of ERISA and the terms of the pension plan, seek redress for Defendant's violation of ERISA, and seek all other appropriate equitable or legal relief under ERISA.

2.     <u>Personal Jurisdiction</u>

Personal jurisdiction exists over Defendant Hollis Glass, Inc. as it is a California corporation and an employer within the meaning of ERISA Section 3(5), (29 U.S.C. § 1002(5)), and NLRA Section 2(2), (29 U.S.C. § 152(2)), and is engaged in an industry affecting commerce within the meaning of ERISA Section 3(11) and (12) (29 U.S.C. § 1002(11) and (12)).

### 3. Service of Process

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested." *Joe Hand Promotions, Inc. v. White*, 2011 WL 4406354, at *2 (N.D. Cal. Aug. 2, 2011). For a corporate defendant, service must be effectuated in accordance with Federal Rule of Civil Procedure ("FRCP") 4(h). Thus, a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Service may also be effected by any method authorized under the law of the state in which the district court is located, in this case California. Fed. R. Civ. P. 4(h)(1)(A). "Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service." *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (citations and quotations omitted).

Here, the process server declares that the summons was personally served on John Hollis, Defendant's agent for service, on March 17, 2011. Dkt. No. 6. Further, the Clerk of Court entered default against Defendant on May 3, 2011. Dkt. No. 10. As such, the Court finds service of process on Defendant appears to be proper.

### B. Legal Standard

FRCP 55(b)(2) permits a court, following a default by a defendant, to enter a final default judgment in a case. The court has discretion in determining whether to grant or deny a motion for entry of default judgment. *Draper v. Coombes*, 792 F.2d 915, 924 (9th Cir. 1986) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one.")).

The Ninth Circuit has enumerated several factors which the court may consider in exercising its discretion as to whether an entry of default judgment is proper: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim and the sufficiency of the complaint;

(3) the sum of money at stake; (4) the possibility of dispute concerning material facts; (5) whether default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In applying this discretionary standard, the factual allegations contained in the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.1987); *see also Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 WL 356378, *1 (N.D. Cal. Mar. 28, 2000).

Where a default judgment is granted, the scope of relief is limited by FRCP 54(c): "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

**C.     Application to the Case at Bar**

    1.     <u>Prejudice to Plaintiffs</u>

Under the first *Eitel* factor, the Court must examine whether Plaintiffs will suffer prejudice if default judgment is not granted. *Eitel*, 782 F.2d at 1471-72. Here, the parties entered into a Collective Bargaining Agreement and a Trust Agreement obligating Defendant to pay fringe benefit contributions to the Trust and to submit to an audit for the purposes of establishing Defendant's performance of said obligation. Compl. ¶ 12. Rather than comply with the terms of the agreement, Defendant made a complete withdrawal from participation in the Trust, which thereby triggered the Trust to assess withdrawal liability against Defendant. *Id.* at ¶ 3; McCormick Decl. ¶ 4. Defendant never challenged the withdrawal liability assessment by requesting review or initiating arbitration. Compl. ¶ 17. The inability to collect the withdrawal liability due and obtain the necessary information from Defendant could limit the Plaintiffs' ability to collect the monies due to the Pension Fund and to pay the employee pensions due to participants. Thus, if the Court were to deny Plaintiffs' Motion for Default Judgment, Plaintiffs would be greatly prejudiced, as Plaintiffs "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Further, delay or failure of Plaintiffs' securing a judgment decreases

or eliminates the ability of Plaintiffs to recover the amounts due from Defendant. The first *Eitel* factor therefore supports the granting of default judgment.

2. <u>Sufficiency of the Complaint and Likelihood of Success on the Merits</u>

The second *Eitel* factor addresses the sufficiency of Plaintiffs' Complaint and the probability of success on the merits of their underlying claim. *Walters v. Statewide Concrete Barrier, Inc.*, 2006 WL 2527776, at *4 (N.D. Cal. 2006) ("A party seeking default judgment must state a valid claim upon which it may recover.").

ERISA provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). The statute further directs that in an action to enforce payment of delinquent contributions, "the court shall award the plan-(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), . . . and (E) such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

The procedure for challenging the amount assessed for withdrawal liability appears in 29 U.S.C. §§ 1399(b)(2)(A) and 1401(a)(1)(A).

Section 1399(b)(2)(A) states:

> (A) No later than 90 days after the employer receives the notice [of the amount of withdrawal liability assessed], the employer-
>
> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
>
> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
>
> (iii) may furnish any additional relevant information to the plan sponsor.

Section 1401(a) (1)(A) states:

8

> (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 U.S.C. §§ 1381-99] shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of-
>
> (A) the date of notification to the employer under section 4219(b)(2)(B) [29 U.S.C. § 1399(b)(2)(B)], or
>
> (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) [29 U.S.C. § 1399(b)(2)(A)].

Here, Defendant made a complete withdrawal from participation in the Trust in August 2005. Compl. ¶ 3; McCormick Decl. ¶ 4. Plaintiffs duly notified Defendant of the withdrawal liability assessed against it as required by ERISA Sections 4201-03 (29 U.S.C. § 1381, et seq.). Compl. ¶¶ 14, 15; McCormick Decl. ¶ 5, Ex. C. In particular, the Trust notified Defendant that it had the option to challenge the calculation of the withdrawal liability by requesting review within 90 days from receiving the notice of the withdrawal liability assessment as provided by ERISA Section 4219(b)(2), (29 U.S.C. § 1399(b)(2)), and that any dispute concerning a determination of withdrawal liability must be resolved through arbitration, provided that arbitration was timely requested under ERISA Section 4221(a), (29 U.S.C. § 1401(a)). Compl. ¶ 15(d) and (e); McCormick Decl. ¶ 5, Ex. C. Defendant never challenged the withdrawal liability assessment by requesting review or initiating arbitration. Compl. ¶ 16.

In sum, the Court finds that Plaintiffs properly notified Defendant of its withdrawal liability, and Defendant failed to comply with the procedure for challenging the amount assessed for withdrawal liability. Thus, Defendant is obligated to pay the amounts due and owing in accordance with the schedule set by Plaintiffs. *See N. Cal. Glaziers, Architectural, Metal & Glassworkers Pension Trust v. Architectural Glass Const., Inc.*, 2009 WL 3721344, at *4 (N.D. Cal. Nov. 05, 2009) (citing *Bd. of Tr. of the W. Conference of Teamsters Pension Trust Fund v. Arizona-Pacific Tank Lines*, 1983 U.S. Dist. LEXIS 12709, at *2-3 (N.D. Cal. Oct. 14, 1983)) ("If the employer fails to make payment when due, and fails to cure the delinquency within 60 days of notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the

employer's outstanding withdrawal liability. 29 U.S.C. § 1399(c)(5)"). Accordingly, Plaintiffs have adequately demonstrated a substantial likelihood of success on the merits of their underlying claim.

        3.      <u>The Sum of Money at Stake in the Action</u>

The third *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against Defendant. In making this assessment, the Court must take into account the amount of money at stake in relation to the seriousness of the defendant's conduct. *Eitel,* 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. 1997). In the instant action, Plaintiffs seek a total of $504,903.44 in withdrawal liability, liquidated damages, interest, and attorneys' fees and costs. Generally a court has great discretion in determining damages. *Gen. Emp. Trust Fund v. Victory Bldg. Maint., Inc.*, 2007 WL 1288393, at *5 (N.D. Cal. Apr. 11, 2007). However, any award in an ERISA action to collect delinquent contributions is governed by 29 U.S.C. § 1132, which circumscribes the latitude given to courts in structuring an appropriate remedy.[2] If a court enters a default judgment in favor of the plaintiff, an award under this section is mandatory, not discretionary. *Nw. Adm'rs, Inc. v. Albertson's Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (citing 29 U.S.C. § 1132(g)(2)). A judgment in favor of the plaintiff pursuant to 29 U.S.C. § 1132(g)(2)(D) and (E) includes "reasonable attorney's fees and cost of the action, to be paid by the defendant," and "such other legal or equitable relief as the court deems appropriate." *Id.*

To be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Northwest Adm'rs,* 104 F.3d at 257.

---

[2] As stated above, any action under ERISA to compel an employer to pay withdrawal liability is treated in the same manner as a delinquent contribution. 29 U.S.C. § 1451(b).

10

Here, Defendant made a complete withdrawal from participation in the Trust in August 2005, Plaintiffs duly notified Defendant of the withdrawal liability assessed against it, and Defendant never challenged the withdrawal liability assessment by requesting review or initiating arbitration. Compl. ¶¶ 3, 14-16. The full withdrawal liability assessed on June 3, 2008 was $414,648.00. McCormick Decl. ¶ 4, Ex. B. Defendant made eight quarterly installment payments on the withdrawal liability totaling $75,672. Compl. ¶ 17; McCormick Decl. ¶ 6. Of that amount, $55,804 was allocated toward interest and $19,868 was allocated toward reduction of the principal liability assessed. *Id.* Defendant thereafter failed to make any further installment payments, leaving a withdrawal liability of $394,780. Compl. ¶¶ 17-18; McCormick Decl. ¶ 6. Thus, the first requirement is satisfied. Second, for the reasons contained herein, the undersigned recommends that the District Court enter judgment against Defendant. Third, the parties' Trust Agreement provides for the award sought by Plaintiffs. Johnson Decl. Ex. A. Therefore, because all the conditions necessary for an award under § 1132(g)(2) are satisfied, Plaintiffs are entitled to a mandatory award under § 1132(g)(2).

Having determined that statutory damages are appropriate, the Court must determine the propriety of the monetary amount requested. While the factual allegations in the complaint are taken as true, the same presumption does not apply to the allegation of damages. *TeleVideo Systems, Inc.,* 826 F.2d at 917. As a result, Plaintiffs have the burden of proving the damages they have purportedly sustained. *Bd. of Trs. of Pipe Trades Dist. Council No. 36 v. Drexal Power, Inc.*, 2004 WL 1753369, at * 1-2 (N.D. Cal. 2004). Here, Plaintiffs have provided the Declaration of Michael McCormick, an Executive Vice-President of Associated Third Party Administrators ("ATPA"), the administrator for the Trust. McCormick Decl. ¶ 1. As part of his job duties, Mr. McCormick supervises the Fund's "withdrawal liability" program in which ATPA determines the withdrawal liability of employers, obtains withdrawal liability calculations from the Fund's actuary, monitors withdrawal liability payments made by employers, and refers delinquent withdrawal liability payments to the Trust's legal counsel. *Id.* at ¶ 2. Mr. McCormick has provided the actuary's report

11

of Defendant's calculated withdrawal liability as well as a spreadsheet detailing the total amount due, including liquidated damages and interest. *Id.* Exs. B, D. Based upon these calculations, as well as the allegations in Plaintiffs' Complaint, the undersigned finds that Plaintiffs have adequately proven the damages they have sustained.[3] Therefore, this factor weighs in favor of default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fourth *Eitel* factor considers the possibility of dispute as to any material facts of the case. *Eitel v. McCool*, 782 F.2d at 1471. Here, Plaintiffs sufficiently allege all the facts necessary to maintain their claim for relief under ERISA. Since Defendant has made no attempt to challenge the accuracy of the Complaint, no dispute of material fact exists that would preclude the District Court from granting Plaintiffs' motion for default judgment.

### 5. Possibility of Excusable Negligence

The fifth *Eitel* factor contemplates the possibility that Defendant's default was the result of excusable neglect. *Id.* at 1471. Under this analysis, the Court considers whether Defendant was put on adequate notice to apprise them of the pendency of the action brought against it. *Phillip Morris USA, Inc. v. Castworld Products*, Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In addition, the Court considers whether the circumstances surrounding Defendant's failure to answer the complaint are sufficient to excuse or justify its default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (Default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof).

In the instant case, Defendant was properly served with both the Complaint and the Notice of Plaintiffs' Motion for Default Judgment. Dkt. No. 6, 20. Further, it appears that Defendant is an ongoing business, and no evidence has been presented that it has entered into bankruptcy or dissolved as a corporate entity. Consequently, Defendant had the ability and every reasonable

---

[3] Plaintiffs' request for attorneys' fees and costs is addressed separately in Section D, *infra*.

opportunity to oppose the underlying action, and there are no grounds on which the Court can find that the default resulted from excusable neglect.

6. Policy for Deciding on the Merits

Under the final *Eitel* factor, the Court must consider the strong policy of the federal courts in favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d at 1472. However, this policy is not dispositive; rather, the Court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors. *PepsiCo,* 238 F. Supp. 2d at 1177. Furthermore, the "defendant's failure to answer the plaintiff's complaint makes a decision on the merits of a case impractical, if not impossible." *Id*. As a consequence, the policy of favoring decisions on the merits does not necessarily preclude a court from granting a default judgment when the defendant fails to respond. *Walters*, 2006 WL 2527776, at *6. Here, Defendant has failed to participate in the proceedings brought against it, despite adequate notice and opportunity to do so. Thus, default judgement is appropriate despite the strong policy of favoring decisions on the merits.

7. Summary

Based on the analysis above, the undersigned finds that the *Eitel* factors weigh in Plaintiffs' favor, and therefore RECOMMENDS that the District Court GRANT Plaintiffs Motion for Default Judgment and award damages as follows:

| | | |
|---|---|---:|
| A. | Withdrawal Liability | $394,780.00 |
| B. | Liquidated damages on delinquent withdrawal liability at 20% | $ 78,956.00 |
| C. | Interest on delinquent withdrawal liability at 5% simple interest per annum through 9/30/11 | $ 17,197.44 |
| | **TOTAL** | **$490,933.44** |

**D. Attorneys' Fees and Costs**

Plaintiffs also seek costs and attorneys' fees as follows: (a) costs of $3,032 ($2,500 investigative fee, $350 filing fee, and $182 for service); and (b) fees of $10,938 for the work of attorneys Richard Johnson and Kimberly Hancock, and the paralegal services of Julie Jellen.

13

Johnson Decl. ¶¶ 19-20. As to costs, the Court finds the requested amount reasonable. Filing and service fees are normal costs associated with the filing of a complaint, and Plaintiffs have established that Defendant provided no information in response to their requests, necessitating Plaintiffs to employ the services of an investigator in an attempt to obtain the information. *Id.* at ¶ 12.

As to attorneys' fees, as discussed above, an award of fees is mandatory because contributions are unpaid, and the plan provides for reasonable fees and costs. *Northwest Adm'rs*, 104 F.3d at 257. Fees are also allowed and appropriate under the terms of the collective bargaining trust agreement. Johnson Decl. Ex. A. To determine a reasonable fee award in cases like this, federal courts use the lodestar method. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582 (9th Cir. 2010). Under the lodestar method, courts multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Once calculated, the lodestar rate may be adjusted to account for other factors, including the customary fee, nature and length of the professional relationship between client and attorney, and the awards allowed in similar cases. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.9 (9th Cir. 1996).

1. Reasonable Hourly Rate

A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The relevant community is "the forum in which the district court sits," which here is the Northern District of California. *Camacho*, 523 F.3d at 979. The party requesting fees must produce satisfactory evidence–in addition to the attorney's own affidavits or declarations–that the rates are in line with community rates. *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984); *Jordan v. Multomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

According to his Declaration, Richard Johnson is a shareholder of Saltzman & Johnson Law Corporation, attorneys for Plaintiffs, and has been counsel to the Fund for over 30 years. Johnson

14

Decl. ¶ 1. Mr. Johnson states that he has spent 1.5 hours in connection with the litigation of this matter, and that he billed Plaintiffs at the rate of $255 per hour through July 31, 2010, and at the rate of $265 per hour from August 1, 2010 through the present. *Id.* at ¶ 13.

Kimberly Hancock was admitted to practice law in the state of California in 1999, has been employed as an associate attorney at Saltzman & Johnson since February 2010, and has worked on ERISA withdrawal liability matters since that month and continuing to the present. *Id.* at ¶ 15. Ms. Hancock also has seven years of experience as a litigation attorney working on ERISA collection matters and employment law matters with Katzenbach & Khitkian. *Id.* Ms. Hancock spent more than 27 hours attributable to the claim against Defendant in this matter, which she billed at the rate of $185 per hour through July 31, 2010, and at the rate of $195 per hour from August 1, 2010 through the present time. *Id.* at ¶ 16.

Julie Jellen earned a paralegal certificate in 1992. *Id.* at ¶ 17. She has been employed as a paralegal at Saltzman and Johnson for over thirteen years and works on ERISA withdrawal liability matters under Saltzman attorneys' supervision and direction. *Id.* Ms. Jellen spent more than 32.8 hours in connection with this case, which she billed at the rate of $110 per hour through July 31, 2010, and at the rate of $115 per hour from August 1, 2010 through the present.

Plaintiffs have submitted evidence that the requested rates are in line with previous applications for attorneys' fees submitted by Saltzman & Johnson, and that these requests were found reasonable. *Id.* at ¶ 13, Ex. I; *see also Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.,* 389 F.Supp. 2d 1222, 1227-28 (N.D. Cal. 2005), (ERISA delinquent contributions action finding associate rate of $225 per hour and partner rate of $345 per hour reasonable); *Trs. on Behalf of Teamsters Benefit Trust v. Casey's Office Moving Serv.,* 2007 WL 1031320, at *5 (N. D. Cal. 2007) (ERISA delinquent contributions action finding reasonable an attorney hourly rate of $250). Based on this information, the Court finds that the hourly rates requested here are reasonable.

2. <u>Reasonable Hours Expended</u>

The Court next evaluates whether the number of hours expended by counsel are appropriate

1 to the requirements of the particular case. Reasonably competent counsel bill a reasonable number
2 of hours; they do not bill hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*,
3 461 U.S. at 434. Thus, if the requested number of hours is greater than the number of hours
4 reasonably competent counsel would have billed, then the Court should reduce the requested number
5 of hours accordingly. *Id.* Additionally, the Court must take into consideration discounts commonly
6 given to clients. As emphasized by the Supreme Court in *Hensley*, "Hours that are not properly
7 billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."
8 *Id.*

9 Here, Saltzman & Johnson have submitted detailed billing records, which establish the
10 following claimed billable hours and attorneys' fees:

| Attorney/Paralegal | Billed Hours |
|---|---|
| Richard Johnson: | $397.50 |
| Kimberly Hancock: | $5,104.50 |
| Julie Jellen: | $3,771.00 |
| **TOTAL:** | **$9,273.00** |

16 Johnson Decl. Ex. J. Based on the evidence submitted in Mr. Johnson's declaration, the undersigned
17 finds that the requested number of hours billed by each timekeeper is reasonable.

18 In addition, Mr. Johnson states in his declaration that he anticipates Ms. Hancock will spend
19 an additional five hours in preparation for and attendance at the hearing on this Motion, and that
20 Julie Jellen will spend an additional six hours for the final preparation and filing of this Motion. *Id.*
21 at ¶¶ 16, 18. However, the undersigned permitted Plaintiffs to appear by telephone at the October 13
22 hearing, and Defendant made no appearance. Further, Plaintiffs provided no evidence, such as time
23 sheets or billing records, for this additional time. Given that Defendant has not opposed Plaintiffs'
24 motion, it is not clear that Saltzman & Johnson spent an additional eleven hours on this case.
25 Accordingly, the undersigned recommends that no fees over those itemized in Mr. Johnson's
26 Declaration be awarded.

Based on this analysis, the undersigned RECOMMENDS that the District Court award costs in the amount of $3,032 and attorneys' fees in the amount of $9,273, for a total award of $12,305.

**E.    Injunctive Relief**

Plaintiffs further seek entry of an order compelling Defendant to produce documents required to enable the Fund to evaluate liability and to determine whether any transactions to evade or avoid withdrawal liability have occurred. ERISA Section 4219(a) mandates that an employer furnish within 30 days of written request such information as the Trust reasonably determines necessary to determine withdrawal liability matters. 29 U.S.C. § 1399(a).

In order to determine members of Defendant's control Group pursuant to ERISA Section 4001(b)(1), (29 U.S.C. § 1301(b)), and to determine whether any transactions to evade or avoid withdrawal liability have occurred under ERISA Section 4212(c), (29 U.S.C. §1392(c)), Plaintiffs made requests for information from Defendant in a letter dated November 24, 2010. Johnson Decl., ¶ 6, Ex. G. Defendant failed to respond to Plaintiffs' request for information. Compl. ¶ 21. Accordingly, the undersigned RECOMMENDS that the District Court order Defendant to comply with its obligations under ERISA Section 4219 (a), (29 U.S.C. § 1399(a)), to provide information to Plaintiffs to enable the Trust to determine withdrawal liability matters, including but not limited to (i) stock certificates and stock ledger of Defendant Hollis Glass, Inc., (ii) identification of other businesses or trades owned by owners of Hollis Glass, Inc., (iii) documents showing percentage of ownership of Hollis Glass, Inc.'s owners in other businesses or trades, including without limitation, ownership interest in Hollis Glass Company and Hollis Equipment Family Limited Partnership, including stock certificates, stock ledgers and/or operating agreements and membership interest certificates and ledger, (iv) all federal and state tax returns for the years 2004 and 2005 of Defendant and all businesses or trades under common control, including without limitation, Hollis Glass Company and Hollis Equipment Family Limited Partnership, (v) federal and state tax returns of owners of Defendant for the years 2004 and 2005, (vi) annual financial statements, both audited and unaudited, prepared on or after January 1, 2004 and January 1, 2005 of Defendant and all businesses

17

or trades under common control, including without limitation, Hollis Glass Company and Hollis Equipment Family Limited Partnership, (vii) accounting records for years ending on or after January 1, 2004, including the general ledger, trial balance, accounts payable journal and cash disbursements journal of Defendant and all business or trades under common control, including without limitation, Hollis Glass Company and Hollis Equipment Family Limited Partnership, (viii) lease agreement for any real estate holdings of owners of Hollis Glass, Inc., and (ix) all notes or loans between Defendant and any owner(s) or businesses or trades under common control, including without limitation, Hollis Glass Company and Hollis Equipment Family Limited Partnership.

## IV.  CONCLUSION

Based on this analysis, the Court RECOMMENDS that the District Court GRANT Plaintiff's Motion for Default Judgment as follows:

1) Enter judgment by default against Defendant Hollis Glass, Inc.;

2) Award Plaintiffs the amount of $490,933.44 for assessed withdrawal liability, liquidated damages, and interest, and $9,273.00 in attorneys' fees and costs, for a total award of $500,206.44; and

3) Order Defendant Hollis Glass, Inc. to produce documents, including without limitation those documents identified in Section III.E above, to reasonably enable Plaintiffs to evaluate the liability of control group members and to determine whether any transactions to evade or avoid the withdrawal liability occurred.

Plaintiffs shall serve a copy of this Report & Recommendation upon Defendant. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file objections to this Report and Recommendation 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: October 13, 2011

MARIA-ELENA JAMES
United States Magistrate Judge